UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SURESH U. RANCHOD,<br><br>                 Plaintiff,<br><br>   v.<br><br>AIG PROPERTY CASUALTY COMPANY, et al.,<br><br>                 Defendants. | CASE NO. C23-1642JLR<br><br>ORDER |

## I.    INTRODUCTION

Before the court is Plaintiff Suresh U. Ranchod's motion to remand this action to King County Superior Court. (Mot. (Dkt. # 9); Reply (Dkt. # 15).) Defendant AIG Property Casualty Company ("AIG") opposes the motion, and Defendant Madison S. Coppock takes no position on the motion to remand. (AIG Resp. (Dkt. # 13); Coppock Resp. (Dkt. # 18); *see also* Ranchod Supp. Reply (Dkt. # 22) (replying to Ms. Coppock's response); AIG Supp. Reply (Dkt. # 24 (same).) The court has considered the

ORDER - 1

submissions of the parties, the relevant portions of the record, and the governing law. Being fully advised,[1] the court GRANTS Mr. Ranchod's motion to remand, DENIES Mr. Ranchod's request for attorney's fees and costs, and REMANDS this matter to King County Superior Court.

## II.    BACKGROUND

This matter originally arose from a 2018 automobile collision between Mr. Ranchod and Ms. Coppock.  (*See* 2d Supp. Compl. (Dkt. # 1-2) ¶¶ 3.1-3.6.)  Mr. Ranchod filed the first iteration of this lawsuit against Ms. Coppock in King County Superior Court on June 10, 2021.  (*See* Compl. (Baker Decl. (Dkt. # 2) ¶ 4, Ex. 4) at 1.)  Mr. Ranchod alleged in his initial complaint that he and Ms. Coppock "resided at all relevant times in Seattle, King County, Washington." (Compl. ¶¶ 1.1-1.2.)  With respect to damages, he alleged only that he was seeking judgment "in an amount to be determined at trial."  (*Id.* ¶ 7.1.)

When the collision occurred, Ms. Coppock and her vehicle were covered by two AIG liability insurance policies.  (2d Supp. Compl. ¶¶ 3.6-3.9.)  AIG determined that Mr. Ranchod's claim was covered by the policies and assigned counsel to defend Ms. Coppock in Mr. Ranchod's lawsuit.  (*See id.* ¶¶ 3.18, 3.26.)  After the parties engaged in discovery and mediation, Mr. Ranchod made a policy limits settlement demand of $2,250,000.  (*Id.* ¶¶ 3.24-3.29.)  AIG, however, refused to offer more than $600,000 to

---

[1] None of the parties have requested oral argument (*see* Mot. at 1; AIG Resp. at 1; Coppock Resp. at 1), and the court finds that oral argument would not be helpful to its resolution of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

settle the case. (*Id.* ¶ 3.30.) Ms. Coppock then hired personal counsel to "protect her from the possibility of an excess verdict being entered against her." (*Id.* ¶ 3.31.) Ms. Coppock's personal attorney "encouraged" AIG to "either settle the matter for the policy limits demand . . . or lift the policy limits and agree to pay any excess verdict themselves." (*Id.* ¶ 3.33.) AIG refused to do so and continued to prepare for trial. (*Id.* ¶ 3.34.)

In May 2023, on the eve of trial, Ms. Coppock and Mr. Ranchod entered into a settlement agreement in which Ms. Coppock "admitted complete liability for the crash, agreed that Plaintiff suffer[ed] physical and traumatic brain injuries as a result of the crash and deferred to expert opinions about causation, and agreed to a settlement of $3,000,000 as reasonable." (*Id.* ¶ 3.36; *see also id.*, Ex. C (settlement agreement).) Ms. Coppock and Mr. Ranchod also agreed that Ms. Coppock would assign her rights to any insurance claims she had against AIG to Mr. Ranchod in exchange for a covenant not to execute against Ms. Coppock's assets. (*Id.* ¶ 3.36.) Shortly thereafter, Mr. Ranchod and Ms. Coppock executed and filed a confession of judgment against Ms. Coppock in the amount of $3,000,000. (*Id.* ¶ 3.37; *see also id.*, Ex. D (confession of judgment).) In June 2023, the King County Superior Court concluded that the settlement was reasonable and entered judgment against Ms. Coppock. (*See id.* ¶¶ 3.39-3.41; *id.* ¶ 3.39, Ex. E (order on motion for a determination of reasonableness and for judgment).)

On July 10, 2023, Mr. Ranchod served an Insurance Fair Conduct Act notice upon AIG, in which he demanded that AIG pay him the $3,000,000 provided for in the judgment. (*Id.* ¶¶ 3.45-3.46.) Shortly thereafter, AIG paid Mr. Ranchod the combined

policy limits of $2,250,000, plus post-judgment interest. (*Id.* ¶ 3.47.) It refused, however, to pay the $750,000 portion of the demand that was above the policy limits. (*See id.* ¶¶ 3.48-3.51.)

On September 25, 2023, Mr. Ranchod amended his King County Superior Court complaint to add AIG as a defendant and to assert against AIG the insurance claims that Ms. Coppock had assigned to him. (*See generally* 2d Supp. Compl.) Mr. Ranchod now lists himself in the caption of his operative second supplemental complaint as filing this action "individually and as assignee of the claims of Madison S. Coppock." (*See id.* at 1.) He also continues to name Ms. Coppock individually as a defendant and alleges that Ms. Coppock resided in Washington "at the times all the tortious events at issue herein occurred." (*See id.*; *see also id.* ¶¶ 1.2, 4.1-4.4 (continuing to assert the settled negligence claim against Ms. Coppock).)

Mr. Ranchod served AIG through the Washington Insurance Commissioner on September 27, 2023. (*See* Baker Decl. ¶¶ 3-4, Exs. 2-3 (service documents).) On October 27, 2023, AIG filed a notice of removal in this court in which it asserted diversity subject matter jurisdiction as the basis for removal, despite Ms. Coppock's alleged Washington residency. (Not. of Removal (Dkt. # 1) at 3-10 (stating that AIG is an Illinois corporation with its principal place of business in New York and arguing that the court should disregard Ms. Coppock's citizenship).) After reviewing the notice of removal, the court ordered Mr. Ranchod to respond to AIG's assertion that the court should ignore Ms. Coppock's purported Washington citizenship in determining whether there is complete diversity among the parties and excuse AIG's failure to obtain Ms.

ORDER - 4

Coppock's consent to removal because Ms. Coppock is a nominal defendant, was fraudulently joined, or is a dispensable party. (11/16/23 Order (Dkt. # 8).) Mr. Ranchod filed the instant motion to remand on November 22, 2023. (Mot.) He filed his response to the court's November 16, 2023 order on December 4, 2023. (Order Resp. (Dkt. # 11).)

After the parties completed their briefing, and mindful of its obligation to ensure that it has subject matter jurisdiction over this matter, the court ordered Ms. Coppock, who appeared to be represented by counsel (*see* Dkt.), to respond to the motion to remand. (1/8/24 Min. Order (Dkt. # 17).) The court asked Ms. Coppock to address what interest, if any, she retains in this matter; her position on whether she was fraudulently joined, is a nominal defendant, or is a dispensable party in this matter; and her view on whether removal was appropriate. (*Id.* at 3.)

On January 19, 2024, Ms. Coppock, proceeding *pro se*, responded to the court's January 8, 2024 order. (Coppock Resp.; Coppock Aff. (Dkt. # 18-1).) Ms. Coppock states that she is and has been a citizen of Alabama and that she resided in Washington only to attend college and for a summer job. (Coppock Aff. ¶¶ 1-10 (explaining Ms. Coppock's contacts with Alabama and Washington); *id.*, Exs. 1-4 (documents demonstrating Ms. Coppock's Alabama citizenship); *see also id.* ¶ 17, Ex. 5 at 12-13[2] (November 2023 email thread in which Ms. Coppock's mother informed Mr. Ranchod's attorney that Ms. Coppock is a "resident of Alabama" and "pays out of state tuition").)

---

[2] The court refers to the page numbers in the CM/ECF header when citing the exhibits to Ms. Coppock's affidavit.

ORDER - 5

Ms. Coppock also states that she believes she is no longer a real party in interest to Mr. Ranchod's claims against AIG. (*Id.* ¶¶ 20-21.)

The court granted Mr. Ranchod and AIG leave to file optional replies addressing the information Ms. Coppock provided with her response. (1/22/24 Min. Order (Dkt. # 21).) Both parties filed timely replies. (Ranchod Supp. Reply; AIG Supp. Reply.) Mr. Ranchod's motion to remand is now ripe for decision.

### III. ANALYSIS

Mr. Ranchod argues that the court must remand this action because (1) the court did not have original jurisdiction over Mr. Ranchod's initial state court complaint and thus lacks removal jurisdiction; (2) AIG is a third-party defendant that does not have the right to remove under *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. ---, 139 S. Ct. 1743, 1748-50 (2019) (holding that third-party counterclaim defendants do not have the right to remove because that right is limited to the defendant to the original complaint); and (3) the one-year time limit specified in 28 U.S.C. § 1446(c)(1) bars AIG's attempt to remove this action. (*See generally* Mot.) AIG, meanwhile, asserts that the court has diversity subject matter jurisdiction over this action—and thus removal is proper—because (1) Mr. Ranchod is a citizen of Washington; (2) AIG is an Illinois corporation with its principal place of business in New York; (3) the amount in controversy exceeds $75,000; and (4) Ms. Coppock is a nominal defendant, was fraudulently joined to this action, or is a dispensable party. (Not. of Removal at 3-10.) It also argues that removal is proper because it is not a third-party defendant and § 1446(c)(1)'s one-year time bar does not apply to this action. (*See generally* AIG Resp.)

Below, the court sets forth the legal standard governing motions to remand, then evaluates Mr. Ranchod's motion to remand and request for attorneys' fees.

**A.     Legal Standard**

A defendant may remove any civil action filed in state court over which federal district courts have original jurisdiction. 28 U.S.C. § 1441(a)(1). District courts have original jurisdiction on the basis of diversity "over suits for more than $75,000 where the citizenship of each plaintiff is different from that of each defendant." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (citing 28 U.S.C. § 1332(a)). Federal courts strictly construe the removal statute and must reject jurisdiction if there is any doubt as to the right of removal in the first instance. *Hawaii ex rel. Louie v. HSBC Bank Nev., N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005) ("[R]emoval statutes should be construed narrowly in favor of remand to protect the jurisdiction of state courts." (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941))). The removing defendant faces a "strong presumption" against removal and bears the burden of establishing, by a preponderance of the evidence, that removal was proper. *Gaus*, 980 F.2d at 566-67.

The procedure for removing an action is governed by 28 U.S.C. § 1446, which sets three key deadlines that affect removability. First, when a case "stated by the initial pleading is removable on its face," § 1446(b)(1) gives a defendant 30 days from service of that pleading to file notice of removal. *Harris*, 425 F.3d at 694; *see also* 28 U.S.C. § 1446(b)(1). Section 1446(b)(1)'s 30-day deadline is triggered only if the basis for

removal "is ascertainable from 'examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 886 (9th Cir. 2010) (quoting *Harris*, 425 F.3d at 694). Second, if the case is not removable based on the initial pleading but the defendant later receives an "amended pleading, motion, order or other paper" that makes a ground for removal "unequivocally clear and certain," § 1446(b)(3) gives the defendant 30 days from receipt of that document to file a notice of removal. *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1090-91 (9th Cir. 2021) (quoting 28 U.S.C. § 1446(b)(3)). Finally, if the case was not removable based on the initial pleading, § 1446(c)(1) sets a one-year deadline for removal based on receipt of an amended complaint or other paper that makes diversity jurisdiction clear under § 1446(b)(3). *See* 28 U.S.C. 1446(c)(1). The right to remove under § 1446(b)(3) expires one year after the action commences "unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1); *see also Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1316-17 (9th Cir. 1998) (analyzing § 1446(c)(1)'s predecessor provision and clarifying that the one-year bar does not apply to later-added defendants where the case was removable on the face of the initial complaint); *Craig v. Universum Commc'ns, Inc.,* No. 20-cv-01284-HSG, 2020 WL 4590597, at *4 (N.D. Cal. Aug. 11, 2020) (stating that when determining whether the § 1446(c)(1) deadline applies, "the question is not whether the case is *currently* removable, but rather whether it was removable *on the face of the initial complaint* when filed in state court" (citing *Ritchey*, 139 F.3d at 1317)).

## B.    Section 1446(c)(1) Bars AIG's Removal of This Action

Applying the standards above, the court agrees with Mr. Ranchod that remand is required under § 1446(c)(1).[3] Mr. Ranchod's initial pleading alleged that he and Ms. Coppock were Washington residents; said nothing about their citizenship; and sought "damages in an amount to be determined at trial." (Compl. ¶¶ 1.2, 7.1.) Thus, the initial complaint was not removable because the basis for diversity jurisdiction was not apparent on the face of the pleading. *Harris*, 425 F.3d at 695-96 (holding action is not removable unless complaint "affirmatively reveal[s] information to trigger removal based on diversity jurisdiction"); *see Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (holding that parties' actual citizenship, not residency, determines diversity); *Craig*, 2020 WL 4590597, at *3 (finding amount in controversy "indeterminate" where plaintiff's initial complaint alleged damages were "TBD at trial"). As a result, because this action commenced in June 2021, the window for removal after receiving a paper making diversity jurisdiction "unequivocally clear" under § 1446(b)(3) expired in June 2022 due to § 1446(c)(1)'s one-year time bar. 28 U.S.C. § 1446(c)(1); *Dietrich*, 14 F.4th at 1090-91; (*see* Compl. at 1). Therefore, AIG's October 27, 2023 notice of removal is

//

//

---

[3] Mr. Ranchod's argument that removal is barred altogether if the court lacked jurisdiction over the original complaint fails because § 1446(b)(3) expressly allows a defendant to remove an action based on the allegations in an amended complaint or other paper. (*See* Mot. at 6-8); 28 U.S.C. § 1446(b)(3). In addition, the court need not and does not consider Mr. Ranchod's position that AIG is a third-party defendant that has no right to remove in the first instance because remand is appropriate even if AIG is treated as a defendant within the meaning of the removal statues. (*See* Mot. at 8-11 (citing *Home Depot*, 139 S. Ct. at 748-50).)

untimely, absent a showing that Mr. Ranchod acted in bad faith to prevent removal. 28 U.S.C. § 1446(c)(1).

The Ninth Circuit has not yet addressed the standard district courts should apply when considering § 1446(c)(1)'s bad faith exception. *See Camper v. Safeway, Inc.*, No. C23-0638JNW, 2023 WL 7403469, at *4 (W.D. Wash. Nov. 9, 2023). District courts in this circuit, however, "have generally inquired whether the plaintiff engaged in strategic gamesmanship designed to keep the case in state court until the one-year deadline has expired." *Id.* (quoting *Torres v. Honeywell, Inc.*, No. 2:20-CV-10879-RGK-KS, 2021 WL 259439, at *3 (C.D. Cal. Jan. 25, 2021)). "As a part of that inquiry, courts have considered the timing of naming and dismissing the non-diverse defendant, the explanation given for dismissal, and whether the plaintiff actively litigated the case in 'any capacity' against a non-diverse defendant before dismissal." *Torres*, 2021 WL 259439, at *3 (quoting *Heacock v. Rolling Frito-Lay Sales, LP*, No. C16-0829JCC, 2016 WL 4009849, at *3 (W.D. Wash. July 27, 2016)); *see also Heller v. Am. States Ins. Co.*, No. CV 15-9771-DMG-(JPRx), 2016 WL 1170891, at *2 (C.D. Cal. Mar. 25, 2016) ("The bad faith exception . . . applies to 'plaintiffs who joined—and then, after one year, dismissed—defendants [whom] they *could* keep in the suit, but that they did not want to keep in the suit, except as removal spoilers.'" (quoting *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1266 (D.N.M. 2014))). "The removing party bears the burden of demonstrating that the plaintiff has acted in bad faith [under § 1446(c)(1)], particularly given the strong presumption against removal." *Heller*, 2016 WL 1170891, at *2

Here, Mr. Ranchod filed his initial complaint in June 2021, and he and Ms. Coppock actively litigated the matter until Ms. Coppock assigned her insurance claims against AIG to Mr. Ranchod in May 2023. (*See* Compl. at 1; 2d Supp. Compl. ¶¶ 3.22-3.36.) Thus, Mr. Ranchod had no reason to name AIG until nearly a year after § 1446(c)(1)'s one-year deadline expired. The court cannot find, based on this timeline, that Mr. Ranchod "engaged in strategic gamesmanship designed to keep the case in state court until the one-year deadline has expired." *Camper*, 2023 WL 7403469, at *4.

AIG relies on *Comer v. Schmitt*, an out-of-circuit case, to support its argument that Mr. Ranchod acted in bad faith to prevent removal. (AIG Resp. at 13 (citing *Comer v. Schmitt*, No. 2:15-cv-2599, 2015 WL 5954589, at *2 (S.D. Ohio Oct. 14, 2015), *report and recommendation adopted*, No. 2:15-cv-2599, 2015 WL 7076634 (S.D. Ohio Nov. 13, 2015)).) AIG's reliance on *Comer*, however, is misplaced. In February 2014, the *Comer* plaintiffs filed a state-court complaint in which they alleged a claim for negligent operation of a motor vehicle against Ms. Schmitt, a nondiverse defendant. *Comer*, 2015 WL 5954589, at *1. The parties reached a settlement in October 2014, but the plaintiffs did not dismiss Ms. Schmitt from the case. *Id.* In January 2015, the plaintiffs amended their complaint to add product liability claims against General Motors ("GM"), a diverse defendant. *Id.* In May 2015, approximately three months after the § 1446(c)(1) deadline expired, Ms. Schmitt moved to enforce the settlement, asserting that the plaintiffs "refused to consummate the settlement because they wanted to keep her in the case in order to forestall removal" to federal court. *Id.* In July 2015, GM "confirm[ed] that Plaintiffs acknowledged that a settlement agreement existed with [Ms.] Schmitt" and

ORDER - 11

filed a notice of removal days later. *Id.* at *1, *4. Noting that it "need only determine that Plaintiffs engaged in intentional action or inaction that prevented Defendant GM from otherwise properly filing for removal before the expiration of the one year period," the district court denied the plaintiffs' motion to remand. *Id.* at *4. The court concluded that the plaintiffs' "methodical delay in consummating the settlement" that the parties reached before the one-year deadline until after the deadline expired was sufficient intentional inaction to constitute bad faith under § 1446(c)(1), thereby excusing GM's late removal. *Id.* Here, by contrast, Mr. Ranchod and Ms. Coppock reached their agreement in May 2023, nearly two years after Mr. Ranchod filed the case, and there is no evidence that Mr. Ranchod engaged in "strategic gamesmanship" or "intentional inaction" to prevent removal before § 1446(c)(1)'s one-year deadline expired in June 2022. Furthermore, AIG has not identified—nor has the court found—any case in the Ninth Circuit in which a court found bad faith arising from a settlement that was reached after the expiration of the one-year deadline. (*See generally* AIG Resp.; AIG Supp. Reply.)

AIG protests that § 1446(c)(1) "was never intended to foreclose a defendant from all opportunity to remove by cutting off removal before the defendant even became a defendant." (AIG Resp. at 14; *see also id.* (arguing that Mr. Ranchod's position "that AIG Property Casualty ***never*** had, and ***could never have***, a right to remove the action against it" is "antithetical to Congress's intent").) AIG is wrong. Courts in this circuit have not hesitated to apply § 1446(c)(1)'s deadline to cases that were pending for years before the removing defendant was added to the case. *See, e.g., U.S. Bank Nat'l Ass'n ex*

*rel. Credit Suisse First Boston v. Edwards*, No. CV 23-00044 LEK-WRP, 2023 WL 6127163, at *1, *4, *7 (D. Haw. Sept. 19, 2023) (finding § 1446(c)(1) barred removal by new defendant who was added seven years after the action commenced[4]); *WMCV Phase, LLC v. Tufenkian Carpets Las Vegas, LLC*, No. 2:12-CV-01454-RCJ, 2012 WL 5198478, at *1 (D. Nev. Oct. 18, 2012) (finding § 1446(c)(1) barred removal by new defendant who was added three years after the action commenced); *see also Home Depot*, 139 S. Ct. at 1749 (noting that "the limits Congress has imposed on removal show that it did not intend to allow all defendants an unqualified right to remove"). Accordingly, in light of the "strong presumption" against removal, *Gaus*, 980 F.2d at 566, the court concludes that AIG has failed to meet its burden to show that Mr. Ranchod acted in bad faith within the meaning of § 1446(c)(1). As a result, AIG's notice of removal was untimely, and the court must grant Mr. Ranchod's motion to remand.

**C.     AIG's Remaining Arguments Fail**

AIG raises several additional arguments in its attempt to escape § 1446(c)(1)'s bar on removal. The court finds none of them persuasive.

<u>1.     Nominal Party or Fraudulent Joinder</u>

AIG asserts that the court should ignore Ms. Coppock's citizenship in determining whether the court has diversity jurisdiction because she either is a nominal party or was

//

//

---

[4] The *Edwards* court also rejected the new defendant's assertion that the amended complaint "should be treated as the commencement of a new action, rather than the continuation of the action commenced in 2015." *Id.* at *8.

fraudulently joined to this action. (Not. of Removal at 4-10.) Neither doctrine, however, provides an exception to the § 1446(c)(1) deadline.

First, the court may deem a party that lacks a concrete interest in the action a nominal party and disregard that party's citizenship when determining whether a case is removable. *See Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1132 (9th Cir. 2002) (observing that the presence of a nominal party cannot defeat removal on basis of diversity). Even if Ms. Coppock is a nominal party, however, AIG has cited no authority holding that § 1446(c)(1)'s one-year time bar does not apply to cases involving a nominal party. (*See generally* Not. of Removal; Removal Reply (Dkt. # 12).)

Similarly, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined when determining whether there is complete diversity. *See Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914). AIG has not, however, identified any cases in which a diverse defendant who was named after the § 1446(c)(1) deadline expired defeated a motion to remand based on the fraudulent joinder of a non-diverse defendant who was named in the initial pleading. To the contrary, the diverse defendants in AIG's cited cases filed their notices of removal before the one-year deadline. *See Wise v. Long*, --- F. Supp. 3d ---, No. C23-5111RJB, 2023 WL 2787223, at *4 (W.D. Wash. Apr. 5, 2023) (dropping non-diverse defendants as fraudulently joined where diverse defendants filed their notice of removal less than one year after the case was filed); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1066-68 (9th Cir. 2001) (affirming district court's decision to ignore the citizenship of fraudulently joined non-diverse defendant where plaintiff named diverse and non-diverse

defendants in her initial complaint and diverse defendant filed its notice of removal less than one year after the case was filed); *see also Weber v. Ritz-Carlton Hotel Co.*, No. 4:18-CV-03351-KAW, 2018 WL 4491210, at *2 (N.D. Cal. Sept. 19, 2018) (observing that fraudulent joinder "pertains to the court's jurisdiction over the action" while the bad faith exception under § 1446(c)(1) "governs the timing of removal"). Thus, absent authority supporting AIG's position that either the existence of a nominal party or fraudulent joinder are exceptions to § 1446(c)(1)'s one-year bar, the court must narrowly construe the removal statute and reject AIG's attempt to remove this case on those grounds. *See Louie*, 761 F.3d at 1034.[5]

### 2. Ms. Coppock's Alabama Citizenship

AIG argues that the § 1446(c)(1) removal bar does not apply here because this case has been removable on diversity grounds from the very beginning based on Ms. Coppock's Alabama citizenship. (AIG Supp. Reply at 3-4 (citing Coppock Aff.).) The court disagrees.

*Craig v. Universum Communications, Inc.* is instructive. 2020 WL 4590597, at *2. There, the plaintiff amended his complaint to quantify his damages—and make diversity jurisdiction apparent—more than a year after he initially filed the case. *Id.* The defendant removed the case and the plaintiff moved to remand under § 1446(c)(1). *Id.* at

---

[5] Although AIG briefly argued in its notice of removal that Ms. Coppock should be dropped from the case because she is a dispensable party to Mr. Ranchod's claims (*see* Removal Resp. at 9-10), it did not make that argument in its later filings (*see* generally Removal Reply; AIG Supp. Reply). In any event, AIG has not directed the court to any authority holding that the § 1446(c)(1) bar should be disregarded where one of the parties is dispensable.

ORDER - 15

\*3. The defendant argued that the § 1446(c)(1) time bar did not apply because the allegations added to the amended complaint demonstrated that the amount in controversy had exceeded $75,000 since the case began. *Id.* The district court rejected this argument and remanded the action as untimely under § 1446(c)(1) because the defendant could not demonstrate that the matter was removable on the face of the initial complaint. *Id.* at \*4; *see also id.* at \*3 ("[W]here Defendant contends that the one-year removal bar does not apply, Defendant must establish that the amount-in-controversy exceeded the jurisdictional threshold on the face of the initial complaint." (citing *Ritchey*, 139 F.3d at 1317)). So too here. Even if Ms. Coppock was a citizen of Alabama when Mr. Ranchod filed suit, the initial complaint was not removable because Ms. Coppock's citizenship and the amount in controversy were not apparent on its face. (*See generally* Compl.); *see Craig*, 2020 WL 4590597, at \*4; *Harris*, 425 F.3d at 695-96; *Ritchey*, 139 F.3d at 1317. Thus, Ms. Coppock's assertion that she has been an Alabama citizen all along makes no difference to the outcome of this motion.

       3.      <u>Ms. Coppock's Affidavit as an "Other Paper" Establishing Diversity</u>

AIG asks the court to construe its supplemental reply as an amended notice of removal because "[Ms.] Coppock's affidavit is 'other paper' that establishes complete diversity for the first time and triggers a thirty-day period in which [AIG] may remove." (AIG Supp. Reply at 5 (citing Coppock Aff.).) Even if the court were to grant AIG's request, however, removal would still be barred by § 1446(c)(1) as an improper attempt to remove on the basis of diversity under § 1446(b)(3) more than a year after the filing of the initial complaint. 28 U.S.C. § 1446(c)(1).

### 4. Procedural Issues

Finally, AIG asserts repeatedly that Mr. Ranchod violated Washington state procedural rules when he added AIG to this lawsuit. (*See, e.g.*, Not. of Removal at 6-7 (arguing that Mr. Ranchod violated Washington claim-splitting rules); *id.* at 7 n.2 (noting it is "unclear" whether filing a second supplemental complaint following final judgment "is even allowed under the Washington Civil Rules"); AIG Resp. at 4, 11-12 (arguing that Mr. Ranchod violated Washington Civil Rule 15(d) by failing to seek leave to file a supplemental complaint); *id.* at 6-8 (arguing that Washington Civil Rule 14 precluded Mr. Ranchod from filing a third-party complaint against AIG).) The proper forum to resolve these questions of state procedure, however, is in state court. *See, e.g.*, *Stiny v. Northrop Grumman Sys. Corp.*, No. CV 16-8532 PSG (AJWx), 2017 WL 787114, at *3 (C.D. Cal. Mar. 1, 2017) (remanding matter for state court to decide whether joinder was proper under state law); *Calisher & Assocs., Inc. v. RGCMC, LLC*, No. CV08-06523-MMM (EX), 2008 WL 4949041, at *6 (C.D. Cal. Nov. 17, 2008) (declining to address procedural defect arguments after concluding case facts required remand to state court).

In sum, the court concludes that AIG has not met its burden to overcome the "strong presumption" against removal. *Gaus*, 980 F.2d at 566. Because the court must resolve any doubts about the removability of this action in favor of remand, the court grants Mr. Ranchod's motion to remand this matter to King County Superior Court. *See Louie*, 761 F.3d at 1034; *Harris*, 425 F.3d at 698.

//

**D.     The Court Denies Mr. Ranchod's Request for Attorney's Fees**

The removal statute authorizes the court to award a plaintiff that prevails on its motion to remand the attorney's fees and costs it incurred as a result of the defendant's removal.  28 U.S.C. § 1447(c).  "Absent unusual circumstances," however, "courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  Although AIG's arguments were ultimately unsuccessful, the court cannot conclude that AIG had no objectively reasonable basis for filing its notice of removal in light of the unusual procedural posture in which this action arrived at this court.  Therefore, the court DENIES Mr. Ranchod's request for attorney's fees and costs.

### IV.     CONCLUSION

For the foregoing reasons, the court GRANTS Mr. Ranchod's motion to remand (Dkt. # 9) and DENIES his request for attorneys' fees and costs.  This matter is REMANDED to King County Superior Court.

Dated this 7th day of February, 2024.

JAMES L. ROBART
United States District Judge